1

2

3

4

5

6

7

8

9           **IN THE UNITED STATES DISTRICT COURT**

10          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

11

12   BENG THOUNSOUK,                          CASE NO. CV-F-04-5406 REC LJO

13                    Plaintiff,              **DECISION ON SOCIAL SECURITY**
                                              **COMPLAINT**
14          vs.                               (Docs. 13, 15, 17.)

15   JO ANNE B. BARNHART,
     Commissioner of Social
16   Security,

17                    Defendant.
                                          /
18

19                              **INTRODUCTION**

20          Plaintiff Beng Thounsouk ("plaintiff") seeks this Court's review of an administrative law judge's

21   ("ALJ's") decision finding that plaintiff is not disabled and is ineligible for Supplemental Security

22   Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1381d. Pursuant

23   to 28 U.S.C. § 636(c) and F.R.Civ.P. 73, the parties agreed to proceed before a United States Magistrate

24   Judge, and by an August 11, 2004 order, this action was assigned to United States Magistrate Judge

25   Lawrence J. O'Neill for all proceedings. Based on review of the Administrative Record ("AR") and the

26   papers of plaintiff and defendant Jo Anne B. Barnhart, Commissioner of Social Security

27   ("Commissioner"), this Court DENIES plaintiff's request to reverse the Commissioner's decision to

28   deny plaintiff SSI or to remand for further proceedings.

                                         1

# BACKGROUND

## Plaintiff's Personal Background

Plaintiff is age 43, immigrated from Laos in 1980, is a resident alien, is unable to communicate in English, and lacks formal education and past relevant work.  (AR 16, 83, 103, 105, 109.)

## Administrative Proceedings

On August 6, 2001, plaintiff filed her SSI application with the Social Security Administration ("SSA") to claim disability since January 1, 2000 based on hearing voices, feeling nervous and anxious, becoming scared around people, low back pain, asthma and depression.  (AR 16, 82, 104.)  With its October 5, 2001 Notice of Disapproved Claims, SSA denied plaintiff's claim and determined plaintiff's condition is not severe enough to prevent her to work.

On October 11, 2001, counsel was appointed for plaintiff.  On October 16, 2001, plaintiff filed her Request for Reconsideration to claim she is "unable to perform any substantial gainful activity due to physical and mental problems." (AR 69.)  With its January 15, 2002, Notice of Reconsideration, SSA denied plaintiff's claim and again determined plaintiff's condition is not severe enough to prevent her to work.  (AR 70.)

On February 5, 2002, plaintiff filed her Request for Hearing by Administrative Law Judge to claim she is "totally disabled."  (AR 74.)  After an October 3, 2002 hearing, the ALJ issued his November 22, 2002 decision to conclude that plaintiff is able to perform a wide range of unskilled medium work and is not disabled.  (AR 21-23.)

Plaintiff submitted to SSA's Appeals Council a December 9, 2002 Request for Review of Hearing Decision to appeal the ALJ's decision.  (AR 11.)  On January 13, 2004, the Appeals Council denied plaintiff's request for review to render the ALJ's decision as the Commissioner's final determination subject to this Court's review.  (AR 5.)

## Medical History And Records Review

### Apai Polyudhapoom, M.D., Treating Physician

Plaintiff treated with Apai Polyudhapoom, M.D. ("Dr. Polyudhapoom"), and on January 4, 2000, presented with coughing, breathing difficulty, itchy throat, running nose, and tender back.  (AR 152.) Dr. Polyudhapoom assessed asthmatic bronchitis and back pain.  (AR 152.)  On February 22, 2000,

plaintiff complained of low back pain and sleep difficulty. (AR 151.) Dr. Polyudhapoom assessed back pain and asthma. (AR 151.)

February 23, 2000 spine x-rays compared with October 7, 1998 x-rays revealed L5 pars defect with spondylolisthesis of L5 on S1 again seen but no significant change in degree of displacement. (AR 150.)

On March 27, 2000, plaintiff presented with coughing, headache, a wheezing sound, and a tender back. (AR 148.) Dr. Polyudhapoom assessed asthmatic bronchitis and back pain. (AR 149.) On May 24, 2000, plaintiff complained of back pain, dry coughing, and breathing difficulty. (AR 148.) Dr. Polyudhapoom assessed asthmatic bronchitis, spondylolisthesis and insomnia. (AR 148.) On July 21, 2000, plaintiff complained of back and leg pain and breathing difficulty. (AR 147.) Dr. Polyudhapoom assessed back pain. (AR 147.) On September 26, 2000, plaintiff complained of itchy throat and coughing. (AR 146.) Dr. Polyudhapoom assessed back pain and insomnia. (AR 146.) On November 3, 2000, plaintiff complained of coughing, breathing difficulty, running nose and itchy throat. (AR 145.) Dr. Polyudhapoom assessed asthmatic bronchitis. (AR 145.)

On January 2, 2001 and March 6, 2001, plaintiff complained of back and leg pain, dry coughing at night, and breathing difficulty. (AR 143, 144.) Dr. Polyudhapoom assessed back pain, asthmatic bronchitis and allergic rhinitis. (AR 143, 144.) On April 11, 2001, plaintiff complained of abdominal pain, diarrhea, vomiting and back pain. (AR 142.) On June 4, 2001, plaintiff complained of breathing difficulty, dry coughing and back pain. (AR 141.) Dr. Polyudhapoom assessed asthmatic bronchitis, allergic rhinitis and back pain. (AR 141.)

### *Hoang Tieu, M.D., Treating Psychiatrist*

Plaintiff treated with Hoang Tieu, M.D. ("Dr. Tieu"), a psychiatrist. Dr. Tieu prepared a July 31, 2001 handwritten psychiatric evaluation to note that plaintiff lives with her husband and children, was born and raised in Laos, and never attended school. (AR 154, 155.) Plaintiff's chief complaint is that she is depressed, cannot sleep and has nightmares. (AR 154.) According to Dr. Tieu's evaluation, when in Laos, plaintiff saw communists kill many people and tie and beat plaintiff's brother. (AR 154.) Dr. Tieu noted that plaintiff has often nightmares and flashbacks regarding the war, is scared on hearing loud voices, had felt suicidal but denies suicidal ideations lately. (AR 154.) Dr. Tieu further noted that

plaintiff has neither been treated by a psychiatrist nor admitted to psychiatric hospital. (AR 155.) Dr. Tieu reported that plaintiff knew neither her age, the then current month or the year. (AR 155.) Dr. Tieu found that plaintiff's concentration is decreased, abstract thinking is "ok," short-term memory is deceased, long-term memory is "ok," and judgment and insight is fair. (AR 155.) Dr. Tieu diagnosed posttraumatic stress disorder and major depressive disorder, single episode, severe without psychotic features. (AR 155.) Dr. Tieu started plaintiff on Paxil 20 mg for her depression and Klonopin .5mg for her anxiety, nervousness and insomnia. (AR 155.)

On August 8, 2002, plaintiff indicated that despite taking medication, she is depressed, has low energy, feels tired, lacks motivation and sometimes cries. (AR 199.) Dr. Tieu diagnosed posttraumatic stress disorder and major depressive disorder, single episode, severe without psychotic features. (AR 199.) On September 4, 2002, plaintiff related that despite her medication, she feels depressed, cries easily, has low energy, is tired, sometimes feels suicidal but denies she was suicidal at that time, experiences difficulty falling asleep and awakes many times during the night. (AR 200.) Dr. Tieu diagnosed posttraumatic stress disorder and major depressive disorder, single episode, severe without psychotic features. (AR 200.) Dr. Tieu increased plaintiff's Celexa from 20 mg to 40 mg. (AR 200.)

Dr. Tieu completed a September 8, 2002 medical source statement (psychiatric) to note plaintiff's depressive syndrome characterized by anhedonia or pervasive loss of interest in almost all activities, appetite disturbance with change in weight, sleep disturbance, decreased energy, difficulty concentrating or thinking, and thoughts of suicide. (AR 201.) Dr. Tieu also noted generalized persistent anxiety accompanied by motor tension, autonomic hyperactivity and vigilance and scanning along with recurrent, intrusive recollection of a traumatic experience. (AR 202.) Dr. Tieu noted plaintiff's marked restriction of daily living activities, difficulties maintaining social functioning, concentration, persistence or pace and three repeated episodes of decompensation of extended duration. (AR 203.) Dr. Tieu found: (1) severely impaired plaintiff's abilities to relate and interact with supervisors and co-workers, to understand, remember and carry out an extensive variety of technical and/or complex job instructions, to deal with the public, and to withstand stress and pressure associated with an eight-hour work day and day-to-day work activity; and (2) moderately impaired plaintiff's abilities to understand, remember and carry out simple one-or-two step job instructions, and to maintain concentration and attention for at least

1   two-hour increments.  (AR 204.)  Dr. Tieu noted that plaintiff's posttraumatic stress disorder, major

2   depressive disorder, severe, insomnia and nightmares.  (AR 204.)

3                              *Virender S. Kaleka, M.D., Treating Physician*

4          Plaintiff treated with Virender S. Kaleka, M.D. ("Dr. Kaleka"), and on August 9, 2001,

5   complained of back, leg, thigh and waist pain and wanted a prescription for her asthma.  (AR 193.)  Dr.

6   Kaleka diagnosed depression, lower back pain and asthma.  (AR 193.)  On September 13, 2001, plaintiff

7   complained of tight chest pain after eating.  (AR 192.)  Dr. Kaleka noted pain in plaintiff's joints,

8   muscles and low back, muscle stiffness, and depression, anxiety, crying, guilt feeling, changes in mood,

9   fearfulness, and nightmares. (AR 192.) Dr. Kaleka diagnosed depression, lower back pain and gastritis.

10  (AR 192.)  On November 5, 2001, Dr. Kaleka noted plaintiff's heartburn, joint pain, muscle pain and

11  stiffness, insomnia, depression, anxiety, guilty feeling, mood changes, fearfulness and nightmares.  (AR

12  191.)  Dr. Kaleka continued his diagnosis of depression, lower back pain and gastritis.  (AR 191.)

13         On January 4, 2002, Dr. Kaleka noted plaintiff's wheezing, heartburn, joint pain, muscle pain

14  and stiffness, insomnia, depression, anxiety, guilt feeling, mood changes, fearfulness and nightmares.

15  (AR 190, 198.)  Dr. Kaleka again diagnosed depression, asthma, lower back pain and gastritis.  (AR 190,

16  198.)  On March 5, 2002, plaintiff complained of constipation, abdomen pain and nausea.  (AR 197.)

17  Dr. Kaleka noted plaintiff's insomnia, depression and anxiety and diagnosed constipation, nausea,

18  depression, asthma, lower back pain and gastritis.  (AR 197.)  On April 10, 2002, Dr. Kaleka noted

19  plaintiff's constipation, heartburn, joint pain, muscle pain and stiffness, insomnia, depression anxiety

20  and guilt feeling.  (AR 196.)  Dr. Kaleka diagnosed depression, asthma, lower back pain and gastritis.

21  (AR 196.)  On June 7, 2002, Dr. Kaleka noted plaintiff's heartburn, joint pain, muscle pain and stiffness,

22  insomnia, depression, anxiety, guilt feeling, mood changes, fearfulness and nightmares. (AR 195.) Dr.

23  Kaleka again diagnosed depression, asthma, lower back pain and gastritis.  (AR 195.)  On August 16,

24  2002, plaintiff complained of sore throat, and Dr. Kaleka noted plaintiff's heartburn, joint pain, muscle

25  pain and stiffness, insomnia, depression, anxiety, guilt feeling, mood changes, fearfulness and

26  nightmares.  (AR 194.)  Dr. Kaleka continued his diagnosis of depression, asthma, lower back pain and

27  gastritis.  (AR 194.)

28  / / /

5

### Shireen R. Damania, M.D., Consultative Psychiatrist

Shireen R. Damania, M.D. ("Dr. S. Damania"), is a board certified psychiatrist and conducted a September 6, 2001 Psychiatric Evaluation.  (AR 157.)  Plaintiff explained to Dr. S. Damania that communists came to her home in Laos when she was age 15 and killed two of her brothers and father in front of her. (AR 158.) Dr. S. Damania attributed plaintiff as indicating that plaintiff's mother "was so depressed following this that she 'died sometime later.'" (AR 158.) Plaintiff chiefly complained of depression and stated that she has "bad dreams of when her parents and brother were killed by the communists."  Plaintiff informed Dr. S. Damania that plaintiff does not attend mental health group therapy because "they irritated her."  (AR 157-158.)

Plaintiff explained to Dr. S. Damania that she spends a typical day doing housework and cooking. (AR 158.)  Plaintiff further explained she goes to the store if her children take her and watches cartoons on television.  (AR 158.)  Plaintiff noted that she handles her own hygiene and grooming.  (AR 158.)

As to her mental status examination, Dr. S. Damania noted:

> There is no evidence of hallucinations or delusions.  There was no evidence of any thought disorder. . . . She was oriented to time, place and person. Memory for recent and past recall was intact.  Attention span was within normal limits.  She was of average intelligence.  However, she stated she did not know who, "The President of the United States was," and when asked what 2 + 2 was, she promptly stated 8.  Insight and judgment were fair.  (AR 159.)

Dr. S. Damania concluded:

> There are no restrictions or limitations in the claimant's daily activities as a result of an emotional impairment. Her interpersonal skills and social functioning are adequate. She is cooperative, pleasant and appropriate.  No difficulties were noted in memory, concentration, persistence or pace.  There was no evidence of any emotional liability. She is able to understand carry out and remember simple as well as one- and two-step job instructions with no difficulty.  She is able to respond appropriately to coworkers, supervisors and the public.  She is able to respond appropriately to usual work situations and deal with changes in routine work setting if the instructions are presented simply and dimensionally in the language she understands.  (AR 159.)

### Rustom F. Damania, M.D., Consultative Internist

Rustom F. Damania, M.D. ("Dr. R. Damania"), is a board eligible internist and conducted a September 6, 2001 internal medicine examination.  (AR 161.)  Plaintiff's chief complaints were:

1.      Low back pain for seven to eight years with gradual onset, no history of trauma, achy daily to the ankles, improvement with rest and medications and no numbness or

1        weakness;

2        2.      Bronchial asthma since childhood with shortness of breath, dry cough and wheezing; and

3        3.      Tiredness and weakness, secondary to insomnia and nightmares.  (AR 161.)

4   Dr. R. Damania noted: "Her nightmares, she states, are in the War, both her parents and her brothers

5   were killed.  At that time, she was only 18 years of age.  At this point, patient tried to sob a little bit, but

6   there were no tears."  (AR 161.)  Plaintiff informed Dr. R. Damania that she had been going "on and off

7   to the County Mental Health Clinic for the past several years."  (AR 162.)

8        Dr. R. Damania's examination revealed that all of plaintiff's extremities and joints are within

9   normal range of motion.  (AR 163-165.)  Dr. R. Damania found plaintiff's gait normal.  (AR 165.)  As

10  to plaintiff's lumbosacral spine, Dr. R. Damania noted:

11       Exaggerated response to pain by me just touching her lower back.  There were no signs
         of acute or chronic inflammation.  No redness, no warmth, no spasm, no deformity.  She
12       had no difficulty getting on and off the table.  Straight leg raising test was completely
         normal . . . Deep tendon reflexes were normal.  Power is Grade V in the lower
13       extremities.  There was no atrophy, spasticity, flaccidity or weakness in the lower
         extremities or wasting. Sensory system: Of particular interest, when I asked her to close
14       her eyes and I used the tuning fork for her vibrations on the right leg and the left, she
         physically responded by withdrawing her leg, but later on after asking her if she felt any
15       vibrations on a second attempt, the patient says she could not feel any sensations.  On
         touching her lower extremities the patient exacerbates with pain, but while touching with
16       a sharp object like a pin, and then asking her for a response she says she cannot feel it.

17       Range of motion is normal.  (AR 165.)

18       Dr. R. Damania diagnosed bronchial asthma fairly well controlled with no history of any acute

19  exacerbation and low back pain with exaggerated response to pain to just touching with no clinical

20  evidence of radiculopathy.  (AR 166.)  Dr. R. Damania assessed:

21       . . . I did not find any objective evidence of gross physical disability.  She had this very
         strange exaggerated response to pain only touching her skin on the lumbosacral spine,
22       and a response to vibratory and pain sensations was observed as she was able to
         withdraw both her lower extremities when her eyes were closed, but when I asked her
23       for the response to vibration and pain sensation, she denies any on questioning.  She is
         fully ambulatory, does not require any assistive device for ambulation.  There are no
24       gross physical limitations.  She should be able to lift at least between 40 and 50 lb on an
         occasional basis and less than 40 lb on a frequent basis.  There were no postural
25       limitations on bending, stooping or crouching.  No manipulative limitations on reaching,
         handling, feeling, grasping or fingering.   No relevant visual or communicative
26       impairments.  There perhaps are some workplace environmental limitations because of
         her asthma.  (AR 166.)

27

28  / / /

                                        7

*Scott Anderson, M.D.*

Scott Anderson, M.D. ("Dr. Anderson"), completed a September 20, 2002 questionnaire to note plaintiff's inability to lift more than 10 pounds due to low back pain and asthma and based on objective findings of diminished range of motion, muscle tenderness and mood change. (AR 205.) Dr. Anderson concluded plaintiff is able to: (1) sit 20-30 minutes before needing to lie down; (2) stand/walk 30 minutes before needing to relax; (3) sit 20-30 minutes during an eight-hour workday; and (4) stand/walk 30 minutes during an eight-hour workday. (AR 205.) Dr. Anderson noted plaintiff is unable to relate and interact with supervisors and coworkers, to maintain concentration, and to "pay attention to anything." (AR 205.) Dr. Anderson noted plaintiff's poor prognosis and marginal effect. (AR 205.)

*Psychiatric Review Technique*

Evelyn Aquino-Caro, M.D. ("Dr. Aquino-Caro"), prepared a September 28, 2001 Psychiatric Review Technique to note plaintiff's nonsevere affective and personality disorders which result in no more than mild restriction of daily living activities and difficulties in maintaining social functioning, concentration, persistence or pace. (AR 168, 171.) Dr. Aquino-Caro noted the absence of cognitive deficits and organic thought disorder. (AR 172.) Brain Ginsburg, M.D. ("Dr. Ginsburg"), agreed with Dr. Aquino-Caro's assessment. (AR 168.)

*Physical Residual Functional Capacity Assessment*

Durell D. Sharbaugh, M.D. ("Dr. Sharbaugh"), a board certified neurologist, completed an October 3, 2001 Physical Residual Functional Capacity Assessment to conclude plaintiff had neither exertional, postural, manipulative, visual, communicative nor environmental limitations, except avoidance of concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. (AR 176-180.) Dr. Sharbaugh noted plaintiff's  minimal impairment of spondylolisthesis, routine pain management, normal examination and exaggerated responses. (AR 185.) Dr. Ginsburg agreed with Dr. Sharbaugh's assessment. (AR 183.)

*Medications*

Plaintiff's medications have included Paxil 40 mg, Klonopin 5 mg, Sulondac 200 mg, Zomig 2.5 mg, Vanceril,  Tylenol 500 mg, Azmacort inhaler, Albuterol, Singulair 10 mg, Triazolam .25 mg, Celexa 40 mg. (AR 108.)

**Plaintiff's Activities And Testimony**

***Reports And Questionnaires***

Plaintiff completed an August 6, 2001 Disability Report Adult to note she is unable to speak, read or write more than her name in English.  (AR 103.)  Plaintiff claims that she hears voices, feels nervous and anxious, becomes scared around people, has asthma, and experiences low back pain and depression to prevent her to work since January 1, 2000.  (AR 104.)  Plaintiff has never worked except for home care of her husband during 1990-1993.  (AR 104.)  Plaintiff has no formal education.  (AR 109.)

Plaintiff completed an August 17, 2001 Asthma Questionnaire to note each night she experiences asthma attacks and takes asthma mediation.  (AR 116.)  An asthma attack has required neither an emergency room visit nor hospitalization.  (AR 116.)

Plaintiff completed an August 17, 2001 Daily Activities Questionnaire to note that on an average day, plaintiff stays home.  (AR 118.)  Plaintiff lacks enough sleep because of nightmares and becomes scared when she hears her name and when she closes her eyes.  (AR 118.)  Medication does not help her to sleep.  (AR 118.)  Plaintiff needs her daughter's help for personal needs, including grooming.  (AR 118.)  Plaintiff's daughter prepares plaintiff's meals and performs household chores, and plaintiff does not shop.  (AR 119.)  Plaintiff ceased all social activities and hobbies because she is "always sick every day."  (AR 119. 121.)  Plaintiff leaves her home only for doctors' appointments to which her daughter drives her.  (AR 120.)  People outside plaintiff's family make plaintiff angry and irritable.  (AR 121.)  Plaintiff has poor concentration and forgets what she wants to do daily.  (AR 122.)  Plaintiff quickly forgets written or oral instructions.  (AR 123.)  Plaintiff's daughter instructs plaintiff on taking plaintiff's medications.  (AR 123.)  Plaintiff has poor concentration, hears voices, experiences body pain weakness, chest and low back pain daily.  (AR 123.)

Plaintiff's daughter, prepared an August 17, 2001 Daily Activities Questionnaire (Third Party Information) to note that on a typical day, plaintiff stays home and does not like "to go outside of home because her sickness."  (AR 124.)  Plaintiff awakes during the night and sleeps less than an hour because plaintiff becomes scared of people or has nightmares.  (AR 124-125.)  Plaintiff needs assistance from her family with personal needs, including grooming and dressing.  (AR 125.)  Plaintiff's daughter

1   prepares plaintiff's meals in that plaintiff does not cook.  (AR 125.)  Plaintiff does not shop because of

2   plaintiff's sickness.  (AR 125.)  Plaintiff does not pay bills and no longer cleans her home.  (AR 126.)

3   Plaintiff neither drives nor engages in recreation activities or hobbies.  (AR 126.)  Plaintiff gets along

4   only with her family.  (AR 127.)  Plaintiff no longer visits friends and depends on her family because

5   plaintiff is sick.  (AR 127.)  Plaintiff no longer participates in social, group or community activities.

6   (AR 127.)  Plaintiff has poor concentration, easily forgets, and does not complete household chores.

7   (AR 128.)  Plaintiff scares easily, especially when she hears loud voices.  (AR 128.)

8          Plaintiff completed a September 10, 2001 Asthma Questionnaire to note that she has asthma

9   attacks every night and takes medication daily.  (AR 130.)  An asthma attack has required neither an

10  emergency room visit nor hospitalization.  (AR 130-131.)

11         Plaintiff completed an October 11, 2001 Reconsideration Disability Report to claim continued

12  difficulty to complete chores due to mental problems.  (AR 132.)  Plaintiff can care for her needs but

13  sometimes needs reminding.  (AR 134.)

14         In a September 25, 2002 statement, plaintiff noted no change in her condition, daily activities

15  or social functioning since seeking SSA reconsideration of her SSI claim.  (AR 136.)

16                      **Plaintiff's Hearing Testimony**

17         Plaintiff testified at the October 3, 2002 ALJ hearing that she was born in Laos but does not

18  remember her date of birth and does not know her age.  (AR 33.)  When asked how old she is, plaintiff

19  responded "maybe close to 40 years old" although she presented identification to indicate her 40th

20  birthday was in a month.  (AR 33.)  Plaintiff did not attend school in Laos and attended classes to learn

21  English in the United States but stopped after two or three months because she "couldn't learn anything."

22  (AR 34.)  Plaintiff is unable to read or write in any language.  (AR 34.)  Plaintiff lives with her husband

23  and two of her four children.  (AR 34.)  Plaintiff is not a United States citizen.  (AR 35.)

24         At one time, plaintiff worked for pay as an in-home care worker for her husband.  (AR 36.)

25  Plaintiff recalls she performed such work for two or three years perhaps during 1990-1994.  (AR 36.)

26  Plaintiff stopped the in-home care for her husband because "some illness" which she identified as

27  depression, inability to concentrate and back pain prevent it.  (AR 37.)

28         Depression cause plaintiff to experience sleep difficulty, tiredness and lack of energy.  (AR 37.)

Plaintiff experiences pain on her lower back to her legs "all the time" for which she takes medication. (AR 37.)  The pain is dull with numbness.  (AR 38.)  After standing for 30 minutes, plaintiff needs to sit down due to pain.  (AR 38.)  Plaintiff can sit for 30 minutes after which she needs to rotate her legs. (AR 38.)  Medication reduces plaintiff's pain for two hours but plaintiff does no exercises due to her lower back.  (AR 39.)  Plaintiff's children give her three pills a day for pain.  (AR 39.)  Plaintiff lies down two hours a day.  (AR 40.)  Plaintiff uses a "warm water pack" three times a day for 20 minutes a time for her back.  (AR 41.)

Plaintiff can concentrate on something, such as folding and putting away clothes, for 10-15 minutes before she loses focus.  (AR 42.)  Plaintiff no longer attends temple, Laos celebrations or family gatherings because of her depression, anger and back pain.  (AR 42.)  Plaintiff experiences breathing problems for which she takes medications three times a day and which provide relief for an hour or two. (AR 43.)

Plaintiff's children do most of the work around the home.  (AR 44.)  In addition to folding clothes, plaintiff prepares food for herself about once a day.  (AR 45.)  Plaintiff does not perform household chores such as sweeping and dusting because of low back pain.  (AR 46.)  Since plaintiff became ill, she does not go shopping often and her children shop.  (AR 47.)

Plaintiff lacks a driver's license and does not like to go into public.  (AR 47.)

### The ALJ's Findings

In his November 22, 2002 decision, the ALJ identified the primary issue as whether plaintiff is under a disability.  (AR 16.)  In determining plaintiff is not disabled and is ineligible for SSI, the ALJ found:

1.  Plaintiff has severe impairments of depressive disorder, bronchial asthma and lumbar spondylolisthesis but which do not meet or medically equal an impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

2.  Plaintiff's allegations regarding her limitations are not totally credible.

3.  Plaintiff has residual functional capacity occasionally to lift up to 50 pounds, frequently to lift/carry up to 25 pounds, and to sit, stand or walk for six hours in an eight-hour day. Plaintiff has the mental capacity to understand, remember and carry out one- or two-step

1  instructions and must avoid exposure to concentrated pulmonary irritants such as smoke,

2  dust or fumes.

3  4.   Plaintiff is illiterate and unable to communicate in English.

4  5.   Plaintiff has the residual functional capacity to perform the full range of medium work.

5  6.   A finding of not disabled is appropriate under Rule 203.25 of the Medical-Vocational

6  Guidelines, 20 C.F.R., Part 404, Subpart P, Appendix 2 based on plaintiff's exertional

7  capacity for medium work, non-exertional limitations, age, education and work

8  experience.  (AR 23.)

9  **DISCUSSION**

10  **Standard Of Review**

11  Congress has provided limited judicial review of a Commissioner's decision made through an

12  ALJ.  *See* 42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ,

13  when the determination is not based on legal error and is supported by substantial evidence.  *See Jones*

14  *v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812

15  F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work

16  contrary to treating physician's findings).[1]   Substantial evidence is "more than a mere scintilla,"

17  *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420 (1971), but less than a preponderance,

18  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  Substantial evidence "means such

19  evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S.

20  at 401, 91 S.Ct. 1420; *Sandgathe*, 108 F.3d at 980.

21  The record as a whole must be considered, weighing both the evidence that supports and detracts

22  from the Commissioner's conclusion. *Sandgathe*, 108 F.3d at 980; *Jones,* 760 F.2d at 995.  If there is

23  substantial evidence to support the administrative finding, or if there is conflicting evidence that will

24  support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.

25  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  If the evidence is susceptible to more than

26

27  [1]   "The district court properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards."  *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th

28  Cir. 1997).

1   one rational interpretation, the court may not substitute its judgment for that of the Commissioner.

2   *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th

3   Cir. 1999).

4         This Court reviews the ALJ's decision pursuant to 42 U.S.C. § 405(g) to determine whether it

5   is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

6   whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988). Plaintiff bears the burden to prove that

7   she is disabled which requires presentation of "complete and detailed objective medical reports of her

8   condition from licensed medical professionals." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999)

9   (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)). "A decision of the ALJ will not be reversed for

10  errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

11        Here, plaintiff claims disability based on hearing voices, nervousness, anxiety, fear around

12  people, asthma, low back pain, and depression. As discussed below, this Court finds that the ALJ

13  properly evaluated the evidence and that his conclusion that plaintiff is not disabled is based on proper

14  legal standards and substantial evidence.

15                                           **ALJ Bias**

16        Plaintiff claims "[t]his ALJ is biased against this Plaintiff and Southeast Asian claimants

17  generally, particularly those who allege mental impairments. Moreover, he has stated off-the-record that

18  he does not find the group credible." The Commissioner notes plaintiff's admission in her opening brief

19  that "there is no methodology currently to determine the truth of this assertion . . . unless this Court will

20  remand for mandated investigation. However, Plaintiff cannot document this with the current record."

21        ALJs "are presumed to be unbiased." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999)

22  (citing *Schweiker v. McClure*, 456 U.S. 188, 195, 102 S.Ct. 1665 (1982)). "This presumption can be

23  rebutted by a showing of conflict of interest or some other specific reason for disqualification."

24  *Schweiker*, 456 U.S. at 195, 102 S.Ct. 1665. The burden of making such a showing rests with the party

25  asserting bias. *Schweiker*, 456 U.S. at 196, 102 S.Ct. 1665; *Verduzco*, 188 F.3d at 1089. "[E]xpressions

26  of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect

27  men and women . . . sometimes display" do not establish bias. *Liteky v. United States*, 510 U.S. 540,

28  555-556, 114 S.Ct. 1147 (1994); *Rollins v. Massanari*, 261 F.3d 853, 858 (9th Cir. 2001). A party

1  claiming bias must show that the ALJ's behavior, in the context of the whole case, was "so extreme as

2  to display clear inability to render fair judgment." *Litekey*, 510 U.S. at 551, 114 S.Ct. 1147; *Rollins*, 261

3  F.3d at 858.

4       Plaintiff admits she lacks "methodology" to support her claim of ALJ bias.  Plaintiff provides

5  neither concrete evidence of ALJ bias nor a declaration to document alleged off-the-record comments.

6  The record before this Court evidences neither ALJ bias nor that plaintiff addressed her claim with the

7  ALJ or Appeals Council.  The Ninth Circuit Court of Appeals has explained:

8       If an ALJ refuses to recuse himself for bias or prejudice, after having been requested to
        do so, a claimant may present his objections to the appeals council "after the hearing."
9       20 C.F.R. § 404.940.  The appeals council then decides whether the hearing decision
        should stand, be revised, or whether a new hearing should be ordered before another
10      ALJ.

11 *Hoye v. Sullivan*, 985 F.2d 990, 992 (9th Cir. 1992).

12 Since plaintiff fails to present evidence of ALJ bias, she fails to meet her burden.  *See Verduzco*, 188

13 F.3d at 1089-1090.

14                    **Development Of Mental Health Record**

15      Plaintiff faults the ALJ for failing to properly develop the mental health record, in particular,

16 failing to request Dr. Tieu's chart notes or to ask for clarification of his opinion.  Plaintiff attaches to her

17 opening brief Dr. Tieu's chart notes from October 2003 to March 2004.  The Commissioner responds

18 that the chart notes are irrelevant in that they fail to establish disability.

19      A claimant "bears the burden of proving she is disabled." *Meanel*, 172 F.3d at 1113; *see Johnson*

20 *v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995).  A claimant must present "complete and detailed

21 objective medical reports of her condition from licensed medical professionals." *Johnson*, 60 F.3d at

22 1113.  An ALJ has an independent "'duty to fully and fairly develop the record and to assure that the

23 claimant's interests are considered.'" *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting

24 *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).  "An ALJ's duty to develop the record further is

25 triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper

26 evaluation of the evidence."  *Mayes v. Massanari*, 276 F.3d 453, 459-460 (9th Cir. 2001).  Moreover,

27 under 20 C.F.R. § 416.912(e), "treating" medical sources are recontacted when evidence is inadequate

28 to reach a determination or decision. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *see Tidwell*

                                        14

1  *v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998) (keeping record open after hearing to supplement physician

2  records fulfills ALJ duty to develop record).

3        Here, plaintiff's counsel requested 20 days after the October 3, 2002 ALJ hearing to get Dr.

4  Tieu's chart notes, and the ALJ granted the request with a few additional days. (AR 48.) The Appeals

5  Council notified plaintiff of the opportunity to submit "more information." (AR 8.) Plaintiff delayed

6  two years until briefing before this Court to present Dr. Tieu's chart notes. In her reply papers, plaintiff

7  claims that Dr. Tieu requires a subpoena for chart notes and contends that plaintiff should not have

8  agreed to obtain the chart notes when the ALJ could have assisted to obtain them. Despite delay to

9  provide the chart notes, plaintiff fails to explain their value even after challenged to do so by the

10  Commissioner.

11        This Court is not in a position to satisfy plaintiff's burden to prove disability. There is no

12  indication that the evidence was inadequate to prevent the ALJ to reach a decision. Dr. Tieu's chart

13  notes reveal that medications help plaintiff and that plaintiff "was cleaning the house," "cleaning the

14  kitchen," "tried to work with her husband," visited with relatives, and was awake and alert. The chart

15  notes reflect neither change nor worsening in plaintiff's mental condition. The chart notes do not

16  undermine the ALJ's finding that plaintiff is able to understand, remember and carry out one- and two-

17  step instructions. The ALJ committed no error regarding record development.

18                    **Evaluation Of Treating Physicians**

19        Plaintiff criticizes the ALJ's failure to give controlling weight to the opinions of Dr. Tieu and

20  Dr. Kaleka. The Commissioner responds that substantial evidence supports the ALJ's rejection of Dr.

21  Tieu and Dr. Kaleka's opinions.

22        The Ninth Circuit distinguishes among the opinions of three types of physicians: (1) those who

23  treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining

24  or consultative physicians); and (3) those who neither examine nor treat the claimant (nonexamining

25  physicians). Generally, more weight should be given to the opinion of a treating source than to the

26  opinions of doctors who do not treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995);

27  *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). The regulations give more weight to opinions that

28  are explained than to those that are not, *see* 20 C.F.R. § 404.1527(d)(3), and to the opinions of specialists

1  concerning matters relating to their specialty over those of nonspecialists, *see* 20 C.F.R. §

2  404.1527(d)(5).  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).

3         However, a treating physician's opinion is not conclusive as to a claimant's physical condition

4  or the ultimate issue of disability and may be disregarded by the ALJ even when it is not contradicted.

5  *Rodriquez v. Bowen*, 876 F.2d 759, 761-762, n. 7 (9th Cir. 1989); *Magallanes v. Bowen*, 881 F.2d 747,

6  751 (9th Cir. 1989); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).[2]  An ALJ may reject a

7  treating physician's opinion whether or not it is contradicted, if the opinion is "brief and conclusory in

8  form with little in the way of clinical findings to support its conclusion."  *Magallanes,* 881 F.2d at 751.

9  Inconsistencies and ambiguities in a treating physician's opinion regarding disability may constitute

10  specific, legitimate reasons to reject the opinion.  *Matney*, 981 F.2d at 1020.  An ALJ may reject a

11  treating physician's report based on a claimant's exaggerated claims.  *See, e.g., Sandgathe*, 108 F.3d at

12  980.

13         The Ninth Circuit has further explained:

14             To reject the opinion of a treating physician which conflicts with that of an
      examining physician, the ALJ must "'make findings setting forth specific, legitimate
15       reasons for doing so that are based on substantial evidence in the record.'" . . . "The ALJ
      can meet this burden by setting out a detailed and thorough summary of the facts and
16       conflicting clinical evidence, stating his interpretation thereof, and making findings." .
      . . The rule . . . does not apply, however, "when the nontreating physician relies on
17       independent clinical findings that differ from the findings of the treating physician." . .
      . "'[T]o the extent that [the nontreating physician's] opinion rests on objective clinical
18       tests, it must be viewed as substantial evidence . . .'"

19  *Magallanes*, 881 F.2d at 751(citations omitted.)

20         "[T]he ALJ is responsible for determining credibility, resolving conflicts in the medical

21  testimony, and for resolving ambiguities."  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

22  Inconsistencies and ambiguities in a treating physician's opinion regarding disability may constitute

23  specific, legitimate reasons to reject the opinion.  *Matney*, 981 F.2d at 1020.

24         After summarizing the medical record (AR 17-19), the ALJ explained his rationale to give

25  limited weight to Dr. Tieu's conclusions and greater weight to Dr. S. Damania's opinion:

26

27         [2]      A treating physician's opinion is not conclusive as to claimant's disability as this ultimate issue is an
    administrative finding reserved to the Commissioner.  20 C.F.R. § 404.1527(e).  The Commissioner has final responsibility
28  to determine a claimant's residual functional capacity.  20 C.F.R. § 404.1546.

16

1
2
3
4
5
6
7

In evaluating the evidence about the claimant's mental impairments, some weight is given to Dr. Tieu's treating record, which initially showed that the claimant had a relatively normal mental status in spite of her allegations of insomnia, anxiety, and depression. The treating record also reflects the claimant's irregular pattern of visits. The timing of these visits, once immediately before the claimant's application for benefits and twice immediately before the current hearing, is not consistent with routine psychiatric treatment, but is consistent with studied maximization of psychiatric symptoms. No weight is given to Dr. Tieu's assessment of the claimant's mental capacity (Exhibit 10F). It is presented on a form which directs certain responses, and appears to be an accommodation for the claimant. Further, nothing in Dr. Tieu's treating record suggests that the claimant has experienced three episodes of decompression, or has marked limitations in mental functioning.

8
9
10
11

Substantial weight is given to the consultative psychiatric examination, and to the examiner's conclusion that the claimant would be able to understand and carry out simple tasks, adjust to changes, and interact appropriately with others in worklike settings. The consultative examination is well documented, thorough, and conducted by a board-certified psychiatrist. . . . Based on the psychiatric consultative examination, the Administrative Law Judge concludes that the claimant has a depressive disorder, but is able to understand, remember and carry out one- and two-step instructions and interact appropriately with others in worklike settings. (AR 20.)

12    The ALJ properly accorded lesser weight to Dr. Tieu's conclusions given that they rest on

13    plaintiff's unsubstantiated claims. The ALJ met his burden to provide a detailed summary of the

14    evidence and his interpretation of it to support limited acceptance of Dr. Tieu's conclusions. The ALJ

15    properly questioned the timing of plaintiff's visits to Dr. Tieu and his accommodating responses for

16    plaintiff, especially given the coaching notations on a form completed by Dr. Tieu. (AR 203.) The ALJ

17    correctly noted the absence of evidence of episodes of decompression and marked limitations. The ALJ

18    committed no error in his evaluation of Dr. Tieu's assessment.

19    Furthermore, reports of consultative physicians, like Dr. S. Damania "may serve as substantial

20    evidence." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). "'To the extent that [the

21    consultative physician's] opinion rests on objective clinical tests, it must be viewed as substantial

22    evidence.'" *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985) (quoting *Allen v. Heckler*, 749 F.2d 577,

23    579 (9th Cir. 1984)). Dr. S. Damania's opinion substantively supports the ALJ's finding that plaintiff

24    has the mental capacity to understand, remember, and carry out one- and two-step instructions. The ALJ

25    correctly relied on the well-documented, thorough examination of Dr. S. Damania, a board-certified

26    psychiatrist, to reach his rational interpretation of the evidence.

27    Plaintiff also challenge's the ALJ's assessments of Dr. Kaleka and Dr. Anderson. As to them,

28    the ALJ noted:

17

1    Little weight is given to the treatment notes from Dr. Kaleka's clinic, which are cursory
     and appear to contain made-to-order diagnoses. For instance, the claimant did not allege
2    any psychiatric symptoms at the initial examination but was diagnosed with post-
     traumatic stress disorder and depression (Exhibit 7F, p. 5). Very little weight is given
3    to Dr. Anderson's September 2002 assessment of the claimant's physical and mental
     capabilities; although he is a clinician employed by Dr. Kaleka, the treating notes do not
4    show that he ever examined the claimant. The treating notes themselves do not contain
     objective findings that the claimant has a back impairment so severe that it would limit
5    her to sitting or standing 20-30 minutes at a time, or total during the day, or that she has
     a mental impairment which impairs her ability to maintain concentration for 2 hours.
6    (AR 19-20.)

7         This Court shares the ALJ's sentiments regarding Dr. Kaleka's brief conclusory assessment with

8    little clinical support. Dr. Kaleka's essentially check off records with brief comments are not entitled

9    to deference. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501

10   (9th Cir. 1983) (expressing preference for individualized medical opinions over check off forms). In

11   addition, the ALJ provided proper, specific grounds to reject Dr. Anderson's assessment in that the

12   assessment was not supported by treating notes which fail to substantiate plaintiff's purported

13   impairments and that Dr. Anderson treated plaintiff.

14                                    **Credibility Evaluation**

15        Plaintiff contends the ALJ "unfairly rejected" her credibility. The Commissioner responds that

16   substantial evidence supports the ALJ's credibility finding.

17        "Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th

18   Cir. 1989); *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988). "An ALJ cannot be required to believe

19   every allegation of disabling pain." *Fair*, 885 F.2d at 603. An ALJ "may disregard unsupported, self-

20   serving statements." *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1464 (9th Cir.

21   1995). "If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is

22   unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit

23   the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v.

24   Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). If an ALJ's credibility finding is supported by substantial

25   evidence in the record, a reviewing court may not engage in second-guessing. *Thomas*, 278 F.3d at 959.

26   A reviewing court will not reverse an ALJ's credibility determinations "based on contradictory or

27   ambiguous evidence." *Johnson*, 60 F.3d at 1434 (citing *Allen*, 749 F.2d at 579 (9th Cir. 1984)).

28        In *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), the Ninth Circuit commented:

> In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (quoting *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995)); 20 C.F.R. § 404.1529(c). An ALJ's finding that a claimant generally lacked credibility is permissible basis to reject excess pain testimony.

*See also* S.S.R. 96-7p.[3]

An ALJ may consider the following factors to determine the credibility of a claimant's allegations of disabling pain:

1.   The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

2.   Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

3.   Type, dosage, effectiveness, and adverse side-effects of any pain medication;

4.   Treatment, other than medication, for relief of pain;

5.   Functional restrictions;

6.   Claimant's daily activities;

7.   Unexplained, or inadequately explained, failure to seek treatment or to follow up a prescribed course of treatment; and

8.   Ordinary techniques to test a claimant's credibility.

*Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991); *see* 20 C.F.R. §§ 404.1529, 416.929.

After summarizing the medical evidence and testimony and considering plaintiff's subjective complaints, the ALJ explained his rationale to question plaintiff:

> Weighing all relevant factors, the Administrative Law Judge finds that the claimant's impairments are not as limiting as she alleges. In spite of recent opinions from treating sources, the treating records themselves do not support the claimant's pain complaints. The claimant is prescribed an anti-inflammatory medication for arthritis, Arthotec, but

---

[3]   Social Security Ruling 96-7p sets out factors to assess a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

1   is not . . . prescribed narcotic pain medications; this suggests that her pain and limitations
2   are not as severe as alleged.  The consultative examination showed that the claimant had
    a normal range of movement in her back and all extremities, and had inconsistent
3   responses to tests.  This supports the conclusion that the claimant is exaggerating her
    pain responses.

4   The claimant's credibility about her mental symptoms is lessened because of
5   discrepancies in the treating and examining records.  The claimant's account of her
    wartime traumas differs in Dr. Tieu's notes, as opposed to Dr. Damania's.  The claimant
6   told Dr. Damania that she was seeing a Mental Health psychiatrist . . . but did not go to
    group therapy because it irritated her; however, Dr. Tieu's notes show that the claimant
7   was a private self-referral, and that she denied any previous psychiatric treatment.  The
    claimant's Disability Report does not show that she had any previous psychiatric
8   treatment before her first visit to Dr. Tieu (Exhibit 1E).  Although the claimant told Dr.
    Tieu and Dr. Damania that she had experienced depressive symptoms for 3-4 years, there
9   is no mention of her depressive symptoms in Dr. Polyudhapoom's records.  These cover
    the period January 2000 through June 2001; they carefully record the claimant's
10  symptoms and treatment, and refer to sleep difficulties twice, essentially in connection
    with physical symptoms (Exhibit 1F, pp. 7, 12).  The absence of any mention of
11  depressive or post-traumatic symptoms in the treating record immediately before the
    claimant's application for benefits casts doubts on the claimant's allegations about the
    severity and duration of her mental impairment.  (AR 21.)

12

13          The ALJ thoroughly explained his rational to cast "doubts" on plaintiff's allegations.  The ALJ

14  correctly noted the absence of treating records to substantiate plaintiff's extreme complaints.  Treating

15  physician Dr. Polyudhapoom did not note the extreme mental limitations which plaintiff claims.  Dr.

16  Tieu, Dr. S. Damania and Dr. R. Damania recorded differing versions of plaintiff's memories of her

17  experiences in Laos to negate her credibility. The ALJ provided specific and substantial reasons to

18  undermine plaintiff's credibility in that the ALJ cited the conflict between plaintiff's testimony and the

19  objective medical evidence in the record.  *See Morgan v. Commissioner of Social Security*

20  *Administration*, 169 F.3d 595, 600 (9th Cir. 1999).  As noted above, the ALJ made specific credibility

21  findings to eviscerate any notion that he arbitrarily discredited plaintiff's testimony.  This Court is not

22  in a position to second guess the ALJ's credibility determination.

23          Moreover, Dr. Tieu treated plaintiff with low level anti-depressants to negate her severe claims.

24  Dr. Tieu noted that medications helped plaintiff.  Plaintiff claims are contradicted by Dr. S. Damania's

25  conclusions that plaintiff lacks restrictions or limitations in daily activities and is able to respond

26  appropriately to work situations.  (AR 159.)  Plaintiff's claims of hearing voices is unsubstantiated in

27  the record. (AR 104.)  Plaintiff's back pain management was limited to medication, not physical therapy

28  or other stepped up treatment.   Treating physician Dr. Kaleka chiefly noted plaintiff's joint pain and

1  muscle stiffness and treated such ailments conservatively.   The lack of x-rays or medical imaging and

2  plaintiff's full range of motion diminish plaintiff's claims of constant pain.  (AR 163-165.)  Dr. R.

3  Damania noted plaintiff's exaggerated response to touch yet her ease to get on and off the table.  (AR

4  165.)  Dr. R. Damania found no objective evidence of gross physical disability and found plaintiff fully

5  ambulatory.  (AR 166.)  No objective evidence supports plaintiff's claims she is limited to 30 minutes

6  of standing or sitting.  (AR 38.)  The record reveals plaintiff's asthma was controlled with medication

7  and did not require emergency treatment or hospitalization.  (AR 116, 130-131, 166.)

8       Plaintiff's claims that she did not know her age or birth date are dubious in that she carries

9  identification with such information.  (AR 33.)  Plaintiff's claims that she needs help for personal needs

10 and that she does not shop, cook or perform household chores are contradicted by her testimony and

11 statements to the physicians.  (AR 44, 118, 125, 158.)

12                            **CONCLUSION AND ORDER**

13      For the reasons discussed above, this Court finds no error in the ALJ's analysis and that the ALJ

14 properly concluded plaintiff is not disabled.  This Court further finds the ALJ's decision is supported

15 by substantial evidence in the record as a whole and based on proper legal standards.  Accordingly, this

16 Court DENIES plaintiff's request to reverse the Commissioner's decision to deny plaintiff SSI or to

17 remand for further proceedings.  This Court DIRECTS the Court's clerk to enter judgment in favor of

18 defendant Jo Anne B. Barnhart, Commissioner of Social Security, and against plaintiff Beng Thounsouk

19 and to close this action.

20      IT IS SO ORDERED.

21 **Dated:    July 12, 2005**              **/s/ Lawrence J. O'Neill**
   66h44d                         UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28